In the Matter of Harry Stanley Bostwick and Steva Maxine Bostwick, Bankrupts.

Harry Stanley BOSTWICK, Appellee,

v.

UNITED STATES of America, Appellant.

Nos. 74–1970 and 74–1971.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1975.

Decided Aug. 1, 1975.

Karl Schmedler, Atty., App. Sect., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Richard E. Shugrue, Omaha, Neb., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

HEANEY, Circuit Judge.

The United States appeals from an order of the United States District Court for the District of Nebraska affirming an order of the Referee in Bankruptcy holding that: (1) the bankruptcy court had jurisdiction to determine the dischargeability of a tax debt where the United States had not filed a proof of claim or otherwise participated in or consented to the proceedings; and (2) that the bankruptcy court had jurisdiction to enjoin the district director from collecting federal taxes where the United States had not filed a proof of claim or otherwise participated in or consented to the proceedings. The United States also contends in this appeal that the action of the bankruptcy court is prohibited by the Declaratory Judgment Act.

We affirm.

Harry Bostwick and Steva Bostwick filed voluntary petitions in bankruptcy on February 15, 1973, in which the United States was listed as a creditor in the amount of $68,400. This sum represented unpaid taxes for the years 1963 through 1967. The United States did not file proofs of claim in either proceeding. Orders of discharge were entered by the referee on May 2, 1973. The bankrupts, on May 3, 1973, filed applications to determine the dischargeability of debts owed to the United States. The United States, on June 26, 1973, filed a motion to dismiss the applications on grounds that the bankruptcy court lacked jurisdiction to grant the bankrupts' applications. On July 10, 1973, the bankrupts sought an order enjoining the United States from collecting back taxes from the bankrupts until the dischargeability of the debts was determined by the bankruptcy court. On that same date, the bankruptcy court held that it had jurisdiction to determine the dischargeability of the debts owed the United States and, thereupon, enjoined the United States from instituting any proceedings against the bankrupts to collect any taxes for 1968 or prior years until the question of the dischargeability of the tax debts was determined by the bankruptcy court. Upon a petition for review filed by the United States, the District Court affirmed and the United States appealed to this Court.

## JURISDICTION OF THE BANKRUPTCY COURT TO DETERMINE THE DISCHARGEABILITY OF A TAX DEBT WHERE THE UNITED STATES HAS NOT FILED A PROOF OF CLAIM.

The dispute as to whether the bankruptcy court has jurisdiction to determine the dischargeability of the bankrupts' tax debt where the United States has not filed a proof of claim or otherwise participated in or otherwise voluntarily consented to the proceedings turns on the proper interpretation of § 2(a) of the Bankruptcy Act.[1] The statute provides that courts of bankruptcy have jurisdiction to:

Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction * * *

The government contends, despite the plain language of the statute, that Congress did not intend to waive the sovereign immunity of the United States. In support of its position, the government cites a report of the majority of the Senate Finance Committee[2] wherein it was stated:

* * * This committee understands that this amendment makes no change in present law under which a bankruptcy court cannot adjudicate the merits of any claim, including a Federal tax claim, which has not been as-

---

1. Section 2a(2A) of the Act, 11 U.S.C. § 11(a)(2A) is an amendment enacted in 1966.

2. S.Rept.No.999, 89th Cong., 2d Sess. (1966) in 2 U.S.Code Cong. & Admin.News pp. 2442, 2452 (1966).

serted in the bankruptcy proceeding by the filing of a proof of claim.

The precise issue before us was considered by Judge Mahon of the Northern District of Texas in a well reasoned and exhaustively researched opinion. Judge Mahon concluded that the government's reliance on the majority report of the Senate Finance Committee was misplaced and that a thorough examination of the legislative history supported a determination that the amendment was intended to grant jurisdiction to the bankruptcy court in factual situations of the type presented here. He stated:

> A review of the legislative history relative to § 2a(2A) and its companion amendments reveals that the statement of the Senate Finance Committee that is herein given emphasis by the Government appears in the closing paragraph of the last section of the majority views of Senate Report No. 999. The statement is made under the concluding general topic, "Comments on Other Provisions of the Bill," not under the more specific section captioned "Discharge of Taxes" wherein H.R. 3438 (encompassing the § 2a(2A) amendment) was addressed. In fact, the Senate Finance Committee's recommendations on H.R. 3438 appeared in Senate Report 998, not Senate Report No. 999, * * * and though the Finance Committee discussed its recommendations on both H.R. 3438 and H.R. 136 in Senate Report No. 999, its views relative to H.R. 3438 were not adopted and its recommendations relative thereto were expressly rejected. * * *

In re Durensky, 377 F.Supp. 798, 801 (N.D.Tex.1974) (Footnotes omitted.).[3]

Judge Mahon, in addition, relied upon the observations of two bankruptcy experts[4] who agree that the statement in the report of the Senate Finance Committee is not determinative in interpreting the amendment. First, they note that the bill to amend the Bankruptcy Act originated in the House and that the House never considered the construction placed on the amendment by the majority report of the Senate Finance Committee. Second, the bill, after passage in the House, was referred to the Senate Judiciary Committee which in turn referred the bill to the Senate Finance Committee for consideration of the tax aspects. Third, the majority of the Finance Committee, at the request of the Treasury Department, proposed a number of changes in the bill and included these recommendations, along with the statement under consideration here, in the majority report. Fourth, the Judiciary Committee rejected the proposals made by the Finance Committee, adopted the minority views opposing the changes and recommended passage of the House Bill without change. The Senate accepted the recommendation of its Judiciary Committee.

■ In the light of such legislative history, the self-serving statement in the majority report of the Finance Committee—inserted at the behest of the Treasury Department—cannot be accorded consideration in construing the amendment.[5]

---

3. Other courts have also stated that the bankruptcy courts have jurisdiction to determine tax liability where the government has not filed a proof of claim. *In the Matter of John West Gwilliam,* 519 F.2d 407 (9th Cir. 1975); *In re Murphy,* 381 F.Supp. 813, 816–817 (N.D. Ala.1974) (reversing on other grounds); *In re Savage,* 329 F.Supp. 968, 969 (C.D.Calif.1971); *In re Curtis,* 69–1 U.S. Tax Cas. ¶ 9433 (W.D. Mich.1969) (referee). *See also In re Century Vault Co.,* 416 F.2d 1035, 1041 (3rd Cir. 1969); *In re Standard Milling Co., Inc.,* 324 F.Supp. 386 (N.D.Tex.1970). *Contra, In re Zook,* 74–1 U.S. Tax Cas. ¶ 9399 (C.D.Calif.1974).

4. Kennedy, The Bankruptcy Amendments of 1966, 1 Ga.L.Rev. 149, 159 n. 41 and 172–173 (1967) and W. Plumb. Report on Federal Income Tax Returns and Liabilities in Bankruptcy at 127, reprinted in Report on the Commission on Bankruptcy Laws of the United States Part III (1973).

5. *See generally Hawkes v. United States,* 467 F.2d 787, 794 (6th Cir. 1972); *United States v. Lake,* 406 F.2d 941, 947 (5th Cir. 1969).

We are in complete agreement with Judge Mahon's analysis. It is evident to us that the Congress, as a whole, rejected the viewpoint stated in the majority report of the Senate Finance Committee and intended the plain meaning of the amendment to have effect. The amendment provides that the bankruptcy court has jurisdiction to "hear and determine * * * *any question* arising as to the amount or legality of any unpaid tax, whether or not previously assessed * * *." (Emphasis supplied.) We find no reason to avoid the plain meaning or to strain the statute.

Further, we are in agreement with Judge Mahon's conclusion that the subsequent amendments to the Bankruptcy Act and the Rules of Bankruptcy Procedure [6] do not support the government's position. Rather, such amendments and rules support and are consistent with the conclusion that the bankruptcy court has jurisdiction in the instant case.[7] Had Congress wished to create the exception urged by the government, it had the opportunity to do so.

### JURISDICTION OF THE BANKRUPTCY COURT TO ENJOIN THE DISTRICT DIRECTOR FROM COLLECTING FEDERAL TAXES.

■ The United States contends that suits to enjoin the assessment and/or collection of taxes are prohibited by the "anti-injunction" statute and hence that the bankruptcy court was without jurisdiction to issue an injunction in this case. Section 7421(a) of the 1954 Internal Revenue Code [8] provides:

Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The United States argues that none of the statutory exemptions are applicable to the present case and that the narrow judicial exception as announced in *Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) [9] and reaffirmed in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and *Alexander v. "Americans United", Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), is equally inapplicable. We agree. However, we do not believe that the "anti-injunction statute" is relevant to the present case inasmuch as Congress has evidenced an intention to enact a complete scheme governing bankruptcy which overrides the general policy represented by the "anti-injunction" act.

We stated above that, in our opinion, Congress has given the bankruptcy court jurisdiction under Section 2a(2A) of the Bankruptcy Act, *supra,* to determine the dischargeability of a tax debt where the United States had not filed a proof of claim or otherwise participated in or consented to the proceedings. We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act.

---

**6.** The Rules of Bankruptcy Procedure were reported to Congress and became effective October 1, 1973.

**7.** *In re Durensky*, 377 F.Supp. 798, 803–805 (N.D.Tex.1974).

**8.** 26 U.S.C. § 7421(a).

**9.** In *Enochs v. Williams Packing Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Court announced a two-part test that must be met in order to grant a pre-enforcement injunction against the assessment or collection of taxes. First, it must be clear that under no circumstances could the government ultimately prevail and, second, equity jurisdiction must otherwise exist.

Section 17(c) of the Bankruptcy Act[10] provides in part:

(1) The bankrupt or any creditor may file an application with the court for the determination of dischargeability of any debt.

\*   \*   \*   \*   \*   \*

(3) After hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof. A creditor who files such application does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision.

(4) The provisions of this subdivision shall apply whether or not an action on a debt is then pending in another court and any part may be enjoined from instituting or continuing such action prior to or during the pendency of a proceeding to determine its dischargeability under this subdivision.

We note first, that Congress, in subsection (c), has given the bankruptcy court jurisdiction to determine the "dischargeability of any debt" at the request of either the bankrupt or any creditor. Second, in subsection (c)(3), the Congress has given the court the power to "make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable." Third, the Congress, in subsection (c)(4), has given the court jurisdiction to enjoin actions in other courts pending its determination. In our opinion, Congress here evidences a complex scheme of regulation and procedures to be followed in determining the dischargeability of debts. We think that the phrase in subsection (c)(3) empowering the bankruptcy court to make the necessary orders to protect or effectuate its determination means exactly what it states and that the court has the power to enjoin the enforcement and/or collection of taxes. Furthermore, we think that the provision in subsection (c)(4), authorizing the issuance of injunctions, clearly evidences an intent by Congress that the orderly administration of the Bankruptcy Act take precedence over the general policy stated in the "anti-injunction" act.[11]

---

10. 11 U.S.C. § 35(c).

11. *See* W. Plumb, Tax Procedures in Bankruptcy, 88 Harv.L.Rev. 1360, 1398–1399 (1975).

It is more remotely conceivable that a far reaching power in the bankruptcy court to preclude the later asserting of unclaimed but nondischargeable tax liabilities may lurk in the Commission's proposed restatement of the existing power of the bankruptcy court to "issue such injunctions . . . and enter such judgments as may be necessary for the protection of a debtor by or against whom a petition has been filed and his estate and for the purpose of carrying out the enforcement of the provisions of this Act." [Commission on the Bankruptcy Laws of the United States, Proposed Act § 2–208.] For present purposes, the significant change from existing law is that the power is to be exercisable "notwithstanding any other federal or state law," and hence in derogation of the provisions prohibiting (with some ex-

ceptions) the issuance of injunctions against the assessment or collection of federal taxes or the rendering of declaratory judgments with respect thereto—prohibitions that have heretofore restrained even the bankruptcy power. However, the subsection of the sovereign to the injunctive power of the court, which would not otherwise be materially changed, *does not confer on the bankruptcy court any power (unless section 17c is properly invoked)* to go beyond collection, administration and distribution of the estate and determine issues of personal liability between the debtor and his creditors. And the extension of the court's reach in no way alters the substantive law to be applied, or empowers the court, in the name of "protection of debtor" or "carrying out the enforcement of the provisions of this Act," to affect the right of the holder of a nondischargeable debt to collect from the debtor's later assets notwithstanding that adequate assets are available in the estate. (Footnotes omitted & emphasis supplied.)

This is a case of first impresson in our Court and neither the United :ates nor the bankrupts nor our own rearch has disclosed previous controllingjecisions on this issue. The United S:tes contends that each year there are ousands of bankruptcies and that our hding will force the government to eithe litigate the dischargeability or forego a1 chance of recovery. It points out thatn many cases, there are no assets of ansignificance and it would be economilly unsound to enter into the case anditigate the issues. The only time it is :onomically feasible to contest the disargeability of the tax debt is after thdebtor has rehabilitated himself and h: after-acquired assets.

▇ While we recognize that t United States has a strong interestn protecting the revenue and that ourolding

will place a burden on the government, we nevertheless are constrained to follow the plain meaning of the statute as enacted by Congress. We think that Congress intended that the bankrupt have the opportunity for a full and final determination of the dischargeability of his tax debts in order that he might avoid having a sword of Damocles hanging over his head. The purpose of the Bankruptcy Act is to rehabilitate the debtor in order that the debtor might be motivated to lead a full and productive economic life.[12] Taxes very often represent one of the largest—if not the largest—debts of the bankruptcy debtor. Congress specifically changed the law so that certain of the tax debts might be discharged.[13] We cannot believe, in light of the statute, that the Congress nevertheless intended that the debtor be left in a state of uncertainty, subject at any

Inasmuch as jurisdiction has been prerly invoked under § 17(c), the bankruptcyurt has jurisdiction to issue the injunctionotwithstanding either the Declaratory Judgnt Act or the Anti-Injunction Act.

12. The rehabilitation of the honest dor has long been a central purpose of the Baruptcy Act. The Supreme Court has statedat:

* * * [It] has been again and an emphasized by the courts as being of )lic as well as private interest, in that it [tBankruptcy Act] gives to the honest butfortunate debtor who surrenders for disution the property which he owns at thene of bankruptcy, a new opportunity in land a clear field for future effort, unhampd by the pressure and discouragement ore-existing debt. * * *

Local Loan Co. v. Hunt, 292 U.S. 234,4, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

13. The fundamental policy of the Banptcy Act is to provide a means for (1) thffective rehabilitation of the bankrupt 1 (2) the equitable distribution of his ssets among his creditors. These basic colerations are involved in the problem tdich this bill is addressed.

Under existing law debts for taxes not affected by a discharge in bankruptcsec. 17a(1) of the Bankruptcy Act, 11 S.C. 35(a)(1)). Similarly, taxes are entitlo a priority of payment, in advance of thayment of any dividend to general crors, which is unlimited as to time (sec. 64: 11

U.S.C. 104(a)(4)). This applies to all taxes whether due to Federal, State, or local governments. Although taxes have enjoyed this special status for many years, the enormous increase in the tax burden during recent years and the consequent impact on both the distribution of a bankrupt's estate and his financial rehabilitation, require a modification of that status.

There are two aspects to the problem. The first of these involves the nondischargeability of taxes under section 17a(1) of the present law. Frequently, this prevents an honest but financially unfortunate debtor from making a fresh start unburdened by what may be an overwhelming liability for accumulated taxes. The large proportion of individual and commercial income now consumed by various taxes makes the problem especially acute. Furthermore, the nondischargeability feature of the law operates in a manner which is unfairly discriminatory against the private individual or the unincorporated small businessman. Although a corporate bankrupt is theoretically not discharged, the corporation normally ceases to exist upon bankruptcy and unsatisfied tax claims, as well as all other unsatisfied claims, are without further recourse even though the enterprise may continue in a new corporate form.

S.Rep.No.1158, 89th Cong., 2d Sess. (1966), in 2 U.S.Code Cong. & Admin.News pp. 2468, 2469 (1966).

time to the whim of the Revenue Service determination that it should now step in. Such a reading of the statute would surely damage the morale of the debtor and defeat the Act's rehabilitative policy.

## APPLICABILITY OF THE DECLARATORY JUDGMENT ACT.

■ The United States contends on appeal that the bankrupt's applications to determine dischargeability of a debt (federal taxes for the years 1963–1967) are expressly prohibited by the "declaratory judgment" statute (28 U.S.C. § 2201) which provides:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

We disagree.

We think that it is manifestly clear that the "applications" are not requests for declaratory judgments in the sense that the statute is intended to prohibit. The "applications" are concerned with taxes allegedly due and owing for the years 1963–1967. The requests for discharge were not concerned with the consequences of a future course of conduct from which tax liabilities may arise. Moreover, we believe that the same logic applies here as was discussed *supra* with regard to the jurisdiction of the bankruptcy court to issue an injunction in such situations as the instant case. We cannot believe that Congress gave the bankruptcy court jurisdiction to determine the dischargeability of tax debts where the United States has not filed a proof of claim, as we have held, and then intended that the determinations should

be prohibited by the Declaratory Judgment Act.

Affirmed.